In the matter of the sale of lands of SARAH V. LEARY, a lunatic.

In the absence of any irregularity, fraud, mistake or legal surprise, a private sale of a lunatic's land, by her guardian, under order of and confirmed by the court of chancery, will not be set aside merely because another person has made an offer for the land exceeding by six per cent. the price produced at the guardian's sale, which increased amount would not repay the purchasers for their outlay and damages in effecting the sale.

On rule to show cause why sale should not be set aside, &c.

*Mr. Sherrerd Depue,* for the petitioner.

*Mr. Joseph A. Beecher,* for the guardian.

*Mr. James M. Trimble,* for the purchaser.

GREEN, V. C.

On application being made to the court for the sale of the lands of the lunatic, an order was made some two years ago, directing John Regan, her guardian, to sell the same for a price not less than $4,500.

After two years ineffectual effort to procure a purchaser at that price, the property having been in the hands of some six real estate agents, on application to the court, another order was made on the 2d day of June, 1892, directing the sale at a price not less than $3,000.

The husband, and the son of the lunatic, both knew of these proceedings being commenced, and there is no pretence but that the best interests of the lunatic would be subserved by a sale of the property at a sound price.

The property was advertised for sale at public auction on the 30th of August, 1892, but prior to that time, and on the 10th of August, 1892, the guardian effected at private sale a contract for the sale of the property for $3,300—$1,000 cash and $2,300 on

bond and mortgage.   On this sale being reported to the court, it
was confirmed on the 31st of August, 1892, and the guardian
directed to make a conveyance in accordance with the terms of
the sale.

On the 20th day of September, 1892, a petition was presented
by Joseph P. Leary, the son and only child of the lunatic, to
Vice-Chancellor Van Fleet, asking to have the order confirming
the sale opened and the sale set aside, and the property sold
again, either at public sale or to a party for the sum of $3,500,
alleging surprise and mistake, and that the sale had actually
taken place without actual notice to him or his father, and that a
certain responsible party, representing a Mr. Eberhardt, had
offered and was willing to give $3,500 for the property.

The vice-chancellor granted an order to show cause why the
relief asked for in this petition should not be granted.   On the
return of the order the purchasers presented affidavits by which it
appeared that they had purchased the property in good faith,
after long negotiations, and that immediately on the agreement
of sale being signed, they employed counsel to search the title
and to represent them in all matters pertaining to the confirma-
tion of the sale; that search of the title was made by their coun-
sel, and, on their being informed that the sale had been con-
firmed, and relying on that fact, they proceeded to raise the
balance of the money which they had to pay, $150 having been
deposited at the time the contract was made; that for this pur-
pose they induced their father and mother to mortgage all their
real estate situated in Newark to the American Life Insurance
Company for $1,000, and that besides being obligated to repay
this sum with one year's interest at five per cent., they have in-
curred other expenses in procuring the loan, viz., search fees and
other charges, which obligation and expenses were incurred
before any proceedings were taken to attack the sale, or before
they had any notice of the petitioner being dissatisfied with the
sale.

That they have, with their wives, executed the bond and mort-
gage which they agreed to do, and have tendered the same to the
guardian, together with the amount in cash required by their

agreement. That the actual outlay, losses and damages incurred by them will amount to more than $200, the difference between the price they agreed to pay and the amount offered by the party referred to by the petitioner.

An affidavit was also presented by the guardian, in which he states that previous to the sale he had been actively engaged in trying to sell the property, pursuant to the order of the court, for a period of nearly two years; that he had placed the property in the hands of at least six real estate agents without effecting any sale, and previous to the said sale had asked Mr. Ulrich Eberhardt, the party who now offers $3,500, to purchase the property, and asked him to name some price that he would be willing to pay; but that said Eberhardt refused to mention any price. That shortly after the sale and its confirmation, he saw the father of the petitioner and told him of the sale, and he said he was glad it was sold. That during all the times he had been managing and endeavoring to sell the property, he had never seen the petitioner, and he was informed by his father that the son had left home, and that he, the father, did not know where he was. The petitioner states that his father attended to his business for him. The guardian further says that he had advertised the property for sale at public vendue, but, being able to make this advantageous sale, he had effected it. That Eberhardt had told him that he had never offered over $2,500 for it, and further, that the offer of the purchasers was the only *bona fide* offer he had ever received for the said property.

This Mr. Eberhardt, it appears, is the owner of property adjoining, and is very desirous of securing this particular piece, and makes an affidavit in support of the petition, in which he offers to pay $3,500 in cash for it, and it also appears that he has been endeavoring to buy it of the purchasers.

There is no irregularity, or fraud, or mistake, or legal surprise proved, to impeach this sale. The conduct of the guardian seems to have been perfectly fair, above-board and honest. The amount offered under the petition is only $200 more than the price which has been obtained by the guardian. This increased amount, if it could, by any proceedings, be turned over to the purchasers,

25

Leary's Case.

would not repay them for their outlay and damages. To now disturb the sale would be a gross injustice to them.

In the case of *Morrisse* v. *Inglis, 1 Dick. Ch. Rep. 306,* Mr. Justice Magie (at *p. 308*), says: " It has long been the settled doctrine and practice of the courts of this state, that judicial sales, made without irregularity or fraud, and not affected by accident or mistake, will not be set aside for mere inadequacy of price" (citing authorities), and that "whether a gross inadequacy of price will, of itself, be considered proof of fraud, or justify interference, has elicited somewhat variant views from the court of chancery" (citing authorities), and held that "there was no gross inadequacy of price" in that case, in which the offer for the land exceeded the amount produced by the sale by only ten and twenty-five hundredths per cent. thereof.

In this case the difference between the offer and the amount produced is but a fraction over six per cent.

The learned justice (at *p. 309*) says: " It is of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith and without collusion or misconduct, and, at least, when the price offered is not unconscionably below the value of the property. Nothing would more evidently tend to discourage and prevent bidding than a judicial determination that such a bidder may be deprived of the advantage of his accepted bid whenever any person is willing to give a larger price. The interest of owners in particular cases must give way to the maintenance of a practice which, in general, is of the highest degree beneficial."

These reasons apply not only to sales at public auction, but to all sales made by order of the court. We have not only the importance of sustaining judicial sales, but in this case the positive injustice to the purchasers which would be wrought if this sale should be disturbed.

I will advise that the order to show cause be discharged.